Brau Ramírez, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
Se recurre, mediante los recursos consolidados de epígrafe, de una resolución emitida el 17 de mayo de 1995 por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, denegando las mociones de desestimación y sentencia sumaria presentadas, respectivamente, por las peticionarias Monterey Marine, Inc. ("Monterey Marine"), los dueños de ésta y Marine Power International, Ltd. ("Marine Power International") en las que se solicitaba la desestimación de la acción por daños y perjuicios bajo la Ley Núm. 75 de 24 de junio de 1964, 10 L.P.R.A. sees. 278 y ss. y por interferencia contractual torticera instada contra las peticionarias por la parte recurrida, Alberto Arroyo Irizarry h/n/c Marina Costa Azul. Por considerar que el Tribunal de Primera Instancia actuó correctamente al declarar sin lugar las referidas mociones de las peticionarias, denegamos los recursos.
II
Según se desprende de los escritos de las peticionarias, la parte recurrida originalmente presentó su demanda contra Marine Power International ante el foro de Primera Instancia el 20 de octubre de 1992, alegando, inter alia, que mediante contrato suscrito el 1 de julio de 1988 entre la parte recurrida y Brunswick Corporation, principal de Marine Power International, esta última había acordado conferirle a la recurrida la distribución "con carácter de exclusividad para toda la isla de Puerto Rico de los motores fuera de borda marca Mariner." La demanda alegaba que para diciembre de 1991, la parte recurrida había advenido en conocimiento de que Marine Power International había incurrido en una actuación de menoscabo de su distribución exclusiva en toda la Isla de los referidos motores, consistente en que había otorgado un contrato de distribución a favor de Monterey Marine, quien resultaba ser un competidor de la parte recurrida. Sé solicitaba compensación por los daños ocasionados por dicha conducta, los cuales fueron estimados en $1,800,000.00. Se incluían como co-demandados a Marine Power International, a Brunswick Corporation, y a ías compañías *946 aseguradoras de éstas. La parte recurrida expuso, además, una segunda causa de acción por daños y perjuicios basada en la conducta de uno de los gerentes de Marine Power International, a quien se imputaba haber influido en la decisión de dicha entidad de llevar a cabo el mencionado menoscabo. Se incluyó como co-demandados en el litigio a esta persona, de nombre José Ovies, a su esposa, la sociedad de bienes gananciales compuesta por ambos y a su compañía aseguradora.
El 26 de marzo de 1993, Marine Power International presentó una solicitud de traslado del caso al Tribunal federal de los Estados Unidos para el Distrito de Puerto Rico, basada en la existencia de diversidad de ciudadanía entre los litigantes. Luego de otros incidentes ante dicho foro, incluyendo la presentación de una moción de sentencia sumaria por Marine Power International donde se alegaba que, según los términos expresos del contrato entre las partes, la parte recurrida no gozaba de una distribución exclusiva en toda la isla de Puerto Rico sino solamente en su parte occidental, la recurrida desistió de su segunda causa de acción y solicitó y obtuvo permiso del Tribunal de Distrito para enmendar su demanda e incluir como parte co-demandada a Monterey Marine, alegando contra ésta interferencia torticera con el contrato de distribución exclusiva de la recurrida. El Tribunal accedió a esta solicitud.
El 13 de enero de 1994, el Tribunal federal devolvió el caso al foro local, al concluir que la inclusión de Monterey Marine como parte co-demandada en el caso había tenido el efecto de destruir la diversidad completa de ciudadanía.
Una vez devuelto el caso al Tribunal de Primera Instancia, la parte recurrida presentó una Segunda Demanda Enmendada ante dicho foro, a la que incorporó las nuevas reclamaciones presentadas ante el foro federal. La Segunda Demanda Enmendada reproducía las alegaciones originales de la recurrida a los efectos de que dicha parte y Marine Power International "firmaron el 11 de julio de 1988 un Contrato de Distribución Exclusiva para la isla de Puerto Rico mediante el cual la parte demandante se obligaba a distribuir los motores Mariner a través de toda la extensión de la isla de Puerto Rico". La recurrida también alegaba que:

"1.12 - La distribución exclusiva de Marina Costa Azul sobre los motores Mariner fuera de borda a través de toda la isla de Puerto Rico fue ratificada por los propios actos, representaciones y ofertas que hizo Marine Power a la parte demandante anteriores, coetáneos y posteriores a la firma del contrato.

1.13 - La intención, significado y acuerdos entre las partes en relación a la exclusividad del demandante sobre la distribución de los motores fuera de borda para toda la isla de Puerto Rico surge tanto del contrato firmado entre las partes el 1ro. de julio de 1988 así como de los actos anteriores, coetáneos y posteriores a la firma del contrato.

1.14 - Existe una controversia entre el demandante y Marine Power sobre el significado, extensión, naturaleza de los derechos de exclusividad otorgados al demandante en el referido contrato de distribución."

La parte recurrida repitió su alegación de que Marine Power había menoscabado la exclusividad de la recurrida en la distribución de los motores Mariner al otorgarle a Monterey Marine el derecho a distribuir dichos motores en Puerto Rico. Se solicitaba compensación por las facilidades, equipo e instalaciones hechos por la recurrida para la distribución y servicio de los motores en Puerto Rico, así como por concepto de la pérdida de plusvalía y clientela relacionados con la conducta imputada.
Como segunda causa de acción se imputaba a Monterey Marine la interferencia con la distribución exclusiva de la recurrida. Se alegaba, además, que:

"2.5 - Aún asumiendo que los derechos de distribución exclusiva de la parte demandante se limitan al área oeste de la isla, lo cual se niega, Monterey y Marine Power interfirieron intencional y maliciosamente con los derechos de la parte demandante al distribuir y vender en el área oeste de Puerto Rico motores fuera de borda marca Mariner."

La recurrida alegaba que "Monterey y Marine Power son solidariamente responsables a la parte *947 demandante por todos los daños y perjuicios que se le ocasionen al demandante como resultado de la interferencia y del menoscabo a los derechos de distribución exclusiva de los motores Mariner fuera de borda en toda la isla de Puerto Rico".
Luego de otros incidentes, el 23 de mayo de 1995, Monterey Marine presentó una moción solicitando la desestimación de la demanda donde se planteaba que Monterey había estado actuando como distribuidor exclusivo de Marine Power International fuera del área asignada a la parte recurrida, la cual no incluía toda la isla de Puerto Rico y sólo el territorio específicamente designado en el contrato. Se alegaba, además, que la demanda contra Monterey Marine estaba prescrita, a la luz del art. 1868 del Código Civil, 31 L.P.R.A. see. 5298, por cuanto Monterey Marine había suscrito un acuerdo de distribución con Marine Power International para la venta de motores Mariner desde el 12 de septiembre de 1991 y había estado distribuyendo dichos motores desde el 23 de febrero de 1992, fecha en que había recibido el primer cargamento. Monterey Marine alegaba que llevaba "en exceso de dos años y medio distribuyendo los productos de Marine Power en Puerto Rico y desde entonces Marina Costa Azul y todos los distribuidores en Puerto Rico tienen conocimiento de ello." La moción fue acompañada de copia del contrato entre las partes.
Por su parte, el 23 de junio de 1994, Marine Power International presentó una moción para desestimar, sobre sentencia sumaria y sobre otros extremos, levantando argumentos similares a los de Monterey Marine. La moción de Marine Power International estaba acompañada de copia del contrato de distribución entre dicha parte y la recurrida y de la transcripción de una deposición tomada al recurrido durante los procedimientos ante el foro federal.
La parte recurrida se opuso a las mociones de Monterey Marine y Marine Power International, aduciendo que la presentación de la demanda original había interrumpido el término prescriptivo contra la primera y que, según expresado en la demanda, existía una controversia real sustancial entre las partes sobre si la recurrida efectivamente gozaba de una exclusividad en toda la isla de Puerto Rico. En apoyo a su oposición a la moción de sentencia sumaria de Marine Power International, la parte recurrida sometió varios documentos y declaraciones juradas, incluyendo un affidavit y una deposición del recurrido Alberto Arroyo, donde éste afirmaba que durante las negociaciones para la concesión de su distribución el Sr. Charley Flores, representante de Marine Power International, se había acordado que la parte recurrida habría de convertirse en distribuidor exclusivo de los motores Mariner en toda la isla de Puerto Rico.
El 17 de mayo de 1995, mediante la resolución recurrida, el Tribunal de Primera Instancia denegó las mociones de los peticionarios. Insatisfechos, éstos acudieron ante este foro.
III
La Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sees. 278 y ss., establece una causa de acción a favor de un distribuidor cuando, inter alia, el principal, sin justa causa para ello, directa o indirectamente realiza un acto de "menoscabo de la relación establecida", sec. 278a. El art. 2A de la Ley, 10 L.P.R.A. 278a-l (Supl. 1994) establece, en su subinciso (b)(2), una presunción controvertible de que ha existido un acto de menoscabo "cuando el principal o concedente establece una relación de distribución con uno o más distribuidores adicionales para el área de Puerto Rico, o cualquier parte de dicha área contrario al contrato existente entre las partes."
La Ley, en otras palabras protege la exclusividad de un distribuidor en la zona de distribución designada, siempre que la exclusividad hubiera sido expresamente pactada entre las partes. Véase, Systema de P.R., Inc. v. Interface Intl, 123 D.P.R. 379, 388 (1989); compárese, J. Soler Motors v. Kaiser Jeep Intl., 108 D.P.R. 134 (1978).
El menoscabo a una relación de distribución de la forma antes descrita se considera "un acto torticero" contra el distribuidor, viniendo obligado el principal a idemnizarle por los daños ocasionados, siguiendo la medida y los parámetros establecidos por el estatuto. Véase, 10 L.P.R.A. sec. 278b.
En Gen. Office Products v. A. M. Capen's Sons, 115 D.P.R. 553 (1984), el Tribunal Supremo de Puerto Rico reconoció, además, que un distribuidor que cuenta con una exclusividad para la *948 distribución de productos en un área designada tiene una causa de acción por daños y perjuicios, bajo el art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, por interferencia contractual torticera, contra cualquier tercero que interfiera con dicha relación de manera culposa. El Tribunal aclaró que la responsabilidad del tercero es solidaria con la del principal que ha incumplido el contrato de distribución. 115 D.P.R. a la pág. 558; Dennis Metro Invs. v. City Fed. Savs., 121 D.P.R. 197, 219-220 (1988).
En el caso de autos, las partes peticionarias han alegado que, de acuerdo a los términos expresos del contrato de distribución suscrito entre las partes el 11 de julio de 1988, la parte recurrida no goza ni ha gozado de una distribución exclusiva en todo Puerto Rico, sino solamente en el área oeste de la Isla. Dicho contrato contenía, en su primera página un listado de las líneas de los productos a ser distribuidos por la parte recurrida, con indicación de si la relación de distribución de cada producto en particular era o no exclusiva. El encasillado correspondiente a los motores Mariner refleja que dicha distribución era exclusiva con respecto a este producto. El contrato añadía: "Por exclusivo se entiende el derecho único y la responsabilidad de vender y brindar servicio en el territorio..." (énfasis original).
En el próximo encasillado, que aludía al territorio asignado por el contrato, se hacía referencia a la "lista y mapa adjunto". El addendum en cuestión ofrecía la siguiente definición del "territorio asignado" en cuanto a los motores fuera de borda Mariner:

"Marina Costa Azul tendrá bajo su cargo un territorio representando aproximadamente mitad (oeste) de la isla de Puerto Rico. El territorio [se] extiende desde el borde este de Arecibo hasta Aguadilla en el norte, de Aguadillo hasta Cabo Rojo en el este y de Cabo Rojo a Salinas en el sur.:

Además de esta caracterización, se incluía un mapa indicando los territorios cubiertos por el contrato. Tanto el contrato como la hoja de addendum y el mapa del territorio cubierto aparecen firmados por el recurrido.
Por su parte, en su declaración jurada prestada ante el foro federal, la que fue introducida ante el Tribunal de Primera Instancia en oposición a la moción de sentencia sumaria de Marine Power International, la parte recurrida ofreció la siguiente versión de los hechos:

"1. At the beginning of 1988 I contacted the offices of Marine Power International in Miami announcing my interest in the exclusive distribution of Mariner outboard motors in Puerto Rico.

2. In this occasion Mr. Romero who answered my call informed me that Mr. Charley Flores was the person responsible for the sales in Puerto Rico of Mariner outboard motors.

3. Few days later Mr. Flores returned my call and informed me that he was already in negotiations with Mr. Jorge Martínez Archilla of Skipper Shop for the distribution of Mariner.

4. A few weeks later Mr. Flores calls me again, this time offering me the distribution of Mariner outboard motors for the western part of the island; in the eastern half Mariner outboard motors were to be distributed by Skipper Shop.

5. At some point in June Mr. Flores invited me to a meeting with Mr. Martinez in the Condado Plaza Hotel to arrange the final details of our distribution relationship with Marine Power International.

6. I was the only person who attended the meeting besides Mr. Flores who then called Mr. Martinez. Mr. Flores then told me that Mr. Martinez was not interested in the distributionship of the Eastern part of Puerto Rico.

7.1 immediatély told Mr. Flores of my interest in becoming the distribution [sic] of Mariner outboard motors for the entire island of Puerto Rico.

8. Mr. Flores then told me that as a condition for the sole distributionship of Mariner outboard motor I had to buy all outstanding inventory that Puerto del Rey Yatch Sales then had of Mariner outboard 
*949
motor. At that point Puerto del Rey was the sole distribution [sic] of Mariner outboard motor[s] for Puerto Rico. I agreed and told Mr. Flores of my disposition in [sic] buying such inventory and becoming distribution [sic] for Puerto Rico of Mariner outboard motor[s].

9. In one of Mr. Flores visits to my place of business he handed me a blank copy of the distribution contract that I had signed; such copy had no addendums attached to it.

10.1 bought the outstanding inventory of Puerto del Rey Yacht Sales.

11. On July 11, 1988 Mr. Flores handed me a contract identical to the form previously handed to me in blank. I noted it was equivocally [sic] filled since the "Mariner" line was marked as nonexclusive; I also noted that two addendum [sic] were then adjoined to the contract.

12. I told Mr. Flores that it was an error the non-exclusive mark for the "Mariner" line, that our arrangement was that I indeed was the exclusive distribution [sic] of Mariner outboard motor[s] in the whole island of Puerto Rico. He agreed and proposed me that we were to erase the non-exclusive mark and change it for the exclusive space, and that both of us would initialize the change. We both did such changes and initialed the "Mariner" line in the contract.

13. With regard to the addendums Mr. Flores told me that I was not to worry about them, that they were to apply to the... non-exclusive lines. I then initialed those addendum."

(Subrayado original), véase apéndice al recurso, a las págs. 200-202.
A base de esta declaración, el Tribunal de Primera Instancia concluyó que existía una controversia real entre las partes sobre la interpretación del contrato entre las partes. El Tribunal observó que en nuestra jurisdicción rige una teoría subjetiva en la interpretación de los contratos, Ramírez v. Rojo, 123 D.P.R. 161, 173-74 (1989), por lo que, habiéndose levantado una controversia sobre los términos del acuerdo por el recurrido, no procedía disponer del caso mediante una sentencia sumaria.
En su recurso, las peticionarias argumentan que la ilustrada sala recurrida erró al conceder insuficiente peso al lenguaje claro del contrato, contrario al mandato del art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3471, en el sentido de que "si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Las recurridas señalan que el contrato entre las partes establece, de forma clara e inequívoca, que la distribución exclusiva de la parte recurrida está limitada al territorio asignado a dicha parte, el cual sólo incluye la porción oeste de la isla, por lo que la parte recurrida está impedida de alegar que el acuerdo contenía términos distintos a los contenidos en el contrato.
Reconocemos, que no se trata de un argumento insubstancial. Véase, Marina Ind. Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 72 (1983) ("[e]l mandato estricto del... Art. 1233 nos obliga a atenernos al sentido literal de los términos del contrato cuando, como en este caso, no dejan dudas de la intención de los contratantes").
Claramente, el permitir la impugnación indiscriminada de los términos de contratos comerciales cuando estos están redactados en lenguaje claro e inequívoco introduciría una indeseable incertidumbre en el tráfico mercantil. La finalidad de observar formalidades en el otorgamiento de este tipo de negocios, preservando sus términos por escrito es, precisamente, evitar las controversias sobre el significado y alcance de las obligaciones pactadas por las partes. De ahí que, conforme al mandato expreso del art. 1233, no proceda el aducir una voluntad subjetiva distinta a los términos del contrato cuando éstos no permiten sino una sola interpretación.
El lenguaje, después de todo, es un fenómeno social, no privado. La teoría de la subjetividad en la interpretación de los contratos encuentra su límite en aquellas situaciones donde la transparencia de los términos utilizados no admite que el otorgante alegue que había posado su mente en un objeto distinto al que se desprende del sentido literal de las palabras utilizadas. Una vez dichas palabras son recogidas, como en el presente caso, en un instrumento formal, debe obrarse con suma cautela al permitir a alguno de los contratantes ir contra lo pactado.
*950 Ahora bien, se trata de una cuestión más bien discrecional, donde debe concedérsele un amplio margen al juicio y sabiduría del Juez de Instancia, quien está más cercano a las brasas de la controversia. En el presente caso, no podemos concluir que el Tribunal de Primera Instancia hubiera abusado de su discreción al denegar las mociones de las partes peticionarias, no obstante la aparente contundencia del lenguaje contenido en el contrato. Las afirmaciones igualmente categóricas del recurrido sobre su intención de adquirir una exclusividad para todo Puerto Rico y sobre las circunstancias equívocas de su otorgamiento del negocio autorizaban al Tribunal de Primera Instancia a explorar más a fondo la controversia a través de la celebración de un juicio en su fondo.
La doctrina en esta jurisdicción es que las dudas sobre la procedencia de una moción de sentencia sumaria deben ser adjudicadas en contra de la parte promovente. Sólo debe dictarse sentencia en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes. PFZ Properties v. General Accident Insurance Co.,_D.P.R._(1994), 94 J.T.S. 116, a la pág. 124; Rivera Santana v. Superior Packing Inc.,_D.P.R._(1992), 92 J.T.S. 165, a la pág. 10,165. En la situación de autos, a la luz del récord discutido, no podemos concluir que el Tribunal de Primera Instancia hubiera abusado de su discreción al denegar las mociones de las peticionarias.
En cualquier caso, lo cierto es que la parte recurrida alegó en su Segunda Demanda Enmendada, de forma alternativa, que, "[a]ún asumiendo que los derechos de distribución exclusiva de la parte demandante se limitan al área oeste de la isla..., Monterey y Marine Power interfirieron intencional y maliciosamente con los derechos de la parte demandante al distribuir y vender en el área oeste de Puerto Rico motores fuera de borda marca Mariner." Esta alegación, a nuestro juicio, resulta suficiente para establecer una controversia real sustancial entre las partes en tomo a los hechos en ella imputados, tomando improcedente una sentencia sumaria. Véase, e.g., Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986).
En cuanto a la contención de Monterey Marine de que la reclamación en su contra estaba prescrita, observamos que en su Segunda Demanda Enmendada la parte recurrida también alegó que Monterey Marine y Marine Power International "son solidariamente responsables a la parte demandante por todos los daños y perjuicios que se le ocasionen al demandante como resultado de la interferencia y del menoscabo a los derechos de distribución exclusiva de los motores Mariner fuera de borda en toda la isla de Puerto Rico". La demanda original contra Marine International fue presentada el 20 de octubre de 1992, menos de un año después del comienzo de la venta de los motores Mariner por Monterey lo que, según la propia alegación de esta última, aconteció el 23 de febrero de 1992. En estas circunstancias, debemos coincidir con el foro de Primera Instancia en que la presentación de dicha demanda efectivamente interrumpió el término prescriptivo en cuanto a Monterey Marine, sujeto, claro está, a que la recurrida pudiera, en su día, establecer dicha solidaridad. Véase, Arroyo v. Hospital La Concepción,_D.P.R._(1992), 92 J.T.S. 66.
Por los fundamentos expresados, se deniegan los autos solicitados.
Lo pronunció el Tribunal y lo certifica la Secretaria General.
María de la C. González Cmz
Secretaria General
ESCOLIO 95 DTA 242
1. El Tribunal consideró la moción de desestimación de Monterey Marine como una de sentencia sumaria, a ten- or con la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 10.2, toda vez que dicha parte no ad-mitió las alegaciones de la segunda demanda enmendada y debido a que dicha moción estaba acompañada de documentos.