SYSTEMA DE PUERTO RICO, INC. y RAFAEL TAMAYO, demandantes y recurridos, *v.* INTERFACE INTERNATIONAL, INC., demandada y peticionaria.

*Número:* CE-88-434          *Resuelto:* 7 de marzo de 1989

380

*Rafael R. Vizcarrondo* y *Mario Arroyo Dávila*, de *Fiddler, González & Rodríguez*, abogados de la peticionaria; *Janet Torres Ramírez*, de *Lasa, Escalera & Reichard*, abogada de los recurridos; *Rafael Ortiz Carrión, Procurador General*, y *Sylvia Cancio Bigas, Procuradora General Auxiliar*, en Informe.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Concierne este recurso los criterios que han de considerar los tribunales de instancia al evaluar un remedio provisional de *injunction* al amparo del Art. 3-A de la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278b-1, o Ley sobre Contratos de Distribución (Ley Núm. 75). Atendidas las circunstancias concurrentes en este caso, según se desprende de los autos originales y los escritos de las partes, erró el tribunal a quo al conceder el remedio interdictal solicitado.

## I

La demandada peticionaria Interface International, Inc. (Interface) es una corporación dedicada a la fabricación de losetas de alfombras modulares localizada en Georgia. En 1980 esta empresa inició una relación de distribución con la demandante recurrida Systema de Puerto Rico, Inc.

(Systema), corporación doméstica que se dedica a la venta de muebles de oficina y productos relacionados.

No existe controversia en torno a que Systema es un distribuidor dentro del significado de la Ley Núm. 75, *supra.* Interface no pagaba comisiones a los demandantes recurridos, sino que realizaba su ganancia al vender las alfombras adquiridas a un precio superior.

A pesar de que Systema alegó ser la distribuidora exclusiva de las alfombras en Puerto Rico, la prueba desfilada en la vista de *injunction* preliminar demostró que desde el inicio de las relaciones comerciales Interface vendía sus productos en la isla utilizando un doble programa de distribución: directamente a varios clientes que constituían "cuentas nacionales", o sea, corporaciones norteamericanas con subsidiarias locales, y a todo el mercado interior en Puerto Rico a través de una red de concesionarios, de distribuidores y, en ocasiones, de contratistas.

Pero como los esfuerzos promocionales no fueron exitosos, el 23 de julio de 1986 Interface dio por terminado su acuerdo verbal de distribución con Systema. Le informó que en adelante sólo le vendería "de caso en caso".

El 27 de enero de 1987 —siete (7) meses después— Systema protestó formalmente la decisión, y casi al año y medio presentó la demanda que origina este incidente interlocutorio. Alegó que Interface incumplió sin justa causa el contrato de distribución en violación a las disposiciones de la Ley Núm. 75, *supra.* En la misma fecha presentó una petición de interdicto provisional al amparo del Art. 3-A de la mencionada ley, *supra.* Oportunamente se celebró una vista para ventilar los méritos de la solicitud.

El 18 de abril de 1988, luego de casi dos (2) años de terminado el acuerdo de distribución, la sala de instancia emitió una resolución mediante la cual ordenaba que Interface mantuviese la relación contractual según los términos originales y le impedía vender a otros distribuidores o contra-

tistas en Puerto Rico, salvo en el caso de las ventas nacionales. Este segundo aspecto de su decreto tuvo el efecto de reconocer a Systema una exclusividad de reventa en la isla. En su análisis, el foro primario no juzgó apropiado examinar y aplicar los criterios tradicionales que informan la expedición del *injunction* clásico, según formulados por nuestra jurisprudencia.

Después de solicitar infructuosamente la reconsideración en instancia, Interface recurrió ante nos mediante petición de *certiorari*, en la cual aducía que el interdicto emitido era contrario a la prueba y no resultaba en el balance más equitativo de los intereses en conflicto. Específicamente argumentó que erró el tribunal a quo al no considerar los criterios tradicionales de un *injunction* al juzgar la procedencia del remedio temporero creado en el Art. 3-A de la Ley Núm. 75, *supra*. Acompañó una moción en auxilio de nuestra jurisdicción.

Oportunamente concedimos a los recurridos término para exponer su posición sobre los méritos del *certiorari* y del auxilio de jurisdicción respectivamente. Por la importancia de la política pública presente en la Ley Núm. 75, *supra*, invitamos al Procurador General de Puerto Rico a exponer su posición sobre las cuestiones jurídicas presentes en este recurso. Por último, aunque en un principio nos negamos a suspender los efectos de la orden recurrida, el pasado 20 de octubre ordenamos, en reconsideración, su paralización.

Analizadas las comparecencias de las partes, y examinado el Informe del Procurador General, finalmente estamos en posición de resolver cuáles son los criterios que rigen la expedición del remedio estatutario del Art. 3-A de la Ley Núm. 75, *supra*.

## II

La medida dispone:

En cualquier pleito en que esté envuelta directa o indirectamente la terminación de un contrato de distribución o cualquier acto en menoscabo de la relación establecida entre el principal o concedente y el distribuidor, el tribunal podrá conceder durante la pendencia del pleito, cualquier remedio provisional o medida de naturaleza interdictal para hacer o desistir de hacer, ordenando a cualquiera de las partes o a ambas a continuar, en todos sus términos, la relación establecida mediante el contrato de distribución, y/o abstenerse de realizar acto u omisión alguna en menoscabo de la misma. *En todo caso en que se solicite el remedio provisional aquí provisto el tribunal considerará los intereses de todas las partes envueltas y los propósitos de política pública que informa este Capítulo.* (Énfasis suplido.) Art. 3-A de la Ley Núm. 75, *supra.*

El remedio provisional previsto en la Ley Núm. 75, *supra*, en virtud de la enmienda incorporada por la Ley Núm. 17 de 24 de mayo de 1971, surge como respuesta de la Asamblea Legislativa al caso de *Félix A. Rodríguez, Inc. v. Bristol-Myers Company*, 281 F. Supp. 643 (D. P.R. 1968). En este pleito la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico se enfrentó al problema de si bajo la Ley Núm. 75, *supra*, un distribuidor podía obtener un remedio preliminar cuyo efecto fuera prolongar la relación *pendente lite* o, dicho de otra forma, obtener el cumplimiento específico del contrato hasta que quedara resuelta definitivamente la cuestión de si hubo justa causa para la terminación de la relación. El Tribunal federal resolvió en la negativa.

Ante esta situación, la Legislatura quiso establecer expresamente que los tribunales pueden conceder un remedio provisional en el ejercicio de su facultad de equidad y así mantener vigentes los términos de un contrato de distribu-

ción, mientras el tribunal evalúa los méritos de la controversia:

> El P. de la C. 1275 es, sin duda, otra de las medidas que contribuyen a evitar que se frustren los propósitos de la repetida Ley núm. 75 de 1964.
>
> La experiencia demuestra que la concesión de remedios provisionales mientras se dilucidan los pleitos que se suscitan bajo la susodicha Ley núm. 75 de 1964, es esencial para evitar se torne académica la protección que dicho estatuto ofrece.
>
> Con la aprobación de la medida en cuestión quedaría claramente establecida la discreción de los tribunales para otorgar remedios provisionales y así evitar se realicen actos que podrían producir daños irreparables mientras se dilucida si existe o no, justa causa para la terminación de la relación contractual. Informe de la Comisión de Industria y Comercio del Senado sobre el P. de la C. 1275 y el P. del S. 943 (25 Diario de Sesiones de la Asamblea Legislativa (Senado), 831 (1971)).

Del historial legislativo de la enmienda se desprende la intención de "evitar serios disloques en negocios establecidos, y el consiguiente desempleo . . . . Además, con este recurso judicial, se permitirá al distribuidor puertorriqueño un tiempo razonable para gestionar otras representaciones". Informe Conjunto de las Comisiones de Planificación, Comercio e Industria y Gobierno, 25 Diario de Sesiones de la Asamblea Legislativa (Cámara), Parte 3, pág. 1207 (1971). En esencia, el remedio persigue evitar que, mientras se dilucida si existe justa causa para la terminación del contrato, un distribuidor tenga que claudicar ante un suplidor económicamente poderoso.

Así el legislador refrendó el propósito de la Ley Núm. 75, *supra*, de proteger los legítimos derechos de un distribuidor frente a los abusos del suplidor que sin justa causa da por terminadas o menoscaba sus relaciones contractuales tan pronto éste ha creado un mercado favorable para los productos. *Medina & Medina v. Country Pride*

*Foods*, 122 D.P.R. 172 (1988); *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983).

Preocupados por el impacto económico de la aplicación rigurosa de los criterios que rigen la expedición del *injunction* clásico, y conscientes de la política pública esbozada en la Ley Núm. 75, *supra*, el legislador expresamente incluyó en su Art. 3-A, *supra*, el mandato de que al hacer el balance de equidades cuando se evalúa la conveniencia de expedir la orden provisional se examinen los intereses de las partes involucradas y los propósitos de esta legislación socioeconómica. Aunque en principio la Ley Núm. 75, *supra*, es un estatuto reparador de daños causados por el suplidor, su Art. 3-A, *supra*, dispone un remedio provisional para que el tribunal pueda, de estimarlo conveniente, mantener vigente las relaciones contractuales mientras dure el litigio. Así evita el debilitamiento del distribuidor en esta etapa crucial del conflicto y nivela el poder real de las partes. A manera de un primer auxilio, equivale a un torniquete que evita que se desangre el distribuidor mientras reclama los derechos consagrados en la Ley Núm. 75, *supra*.

Sin embargo, los tribunales no deben ejercer su discreción con automatismo judicial. Se requiere un examen integral de la prueba y un ponderado balance de los intereses y equidades de las partes. Para descargar responsablemente su función, los tribunales deben aplicar los criterios de equidad elaborados a través de la jurisprudencia del *injunction* clásico, atemperados a los propósitos de la Ley Núm. 75, *supra*. Aunque el estatuto no impide la utilización de estos criterios, la decisión debe ser compatible con el espíritu de la Ley Núm. 75, *supra*. La naturaleza equitativa de este remedio permite igualmente la incorporación de las defensas clásicas de incuria, manos limpias e impedimentos.

█ Un examen a fondo de la orden de instancia revela que dicho foro evaluó la situación tomando en consideración únicamente el criterio de la justa causa en la terminación del contrato, lo que sin duda tiene relevancia a efectos de considerar las probabilidades que Systema tiene de prevalecer en los méritos. No obstante, la situación exigía, como veremos, un balance de equidades más abarcador.

## III

█ En primer lugar, el *injunction* tuvo el efecto de reconocer a Systema una exclusividad que nunca tuvo. La exclusiva representa, en situaciones como la presente, una limitación contractual —obligación de no hacer— del principal. Tiene el efecto de impedir que dicho principal o concedente realice prestaciones de la misma naturaleza de las que constituye el objeto del contrato durante su vigencia, directa o indirectamente, en la zona para la cual se concede la exclusiva. R. Bercovitz y Rodríguez-Cano, *Acuerdos restrictivos de la competencia*, Madrid, Ed. Montecorvo, 1977, pág. 241 *et seq.*; J. Garrigues, *Tratado de Derecho Mercantil*, Madrid, Ed. Rev. Der. Mercantil, 1963, T. III, Vol. 1, pág. 428; T. Puente Muñoz, *El pacto de exclusiva en la compraventa y el suministro*, 43 Rev. Der. Mercantil 75 *et seq.* (1967); L. Díez-Picazo, *Estudios sobre la Jurisprudencia Civil*, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 389 *et seq.*

La prueba en este caso demostró que durante el tiempo que duró la relación (1980–1986) Interface vendió directamente sus productos en Puerto Rico a varios clientes que constituían "cuentas nacionales". También durante esos años vendió sus productos a otros distribuidores y contratistas en Puerto Rico.(1) El foro de instancia evidentemente se sintió

---

(1) Entre éstos se encontraban: Simón Drury, Building Center, Poly Carpets, Florida & Caribbean, Fashion Carpets, Rexach Construction, Bird Construction,

obligado por un proyecto de contrato que en abril de 1981 Interface envió a los demandantes recurridos ofreciéndoles exclusividad en Puerto Rico por un (1) año.(²) Sin embargo, en vista de las diferencias en cuanto a algunos descuentos, Systema decidió no suscribir el mismo, por lo que dicha propuesta nunca llegó a materializarse. La práctica comercial por varios años tampoco demostró un acuerdo verbal en tal sentido.

De acuerdo con esta línea de principios, resulta igualmente evidente que erró el tribunal de instancia al condonar la inacción de Systema y dictar el interdicto provisional luego de transcurrir más de veinte (20) meses desde que Interface dio por terminada la relación.

Tampoco Systema alegó que si no se dictaba la orden sufriría perjuicios, tales como: (1) la incapacidad de sufragar los gastos del litigio de no recibir *pendente lite* los ingresos de las ventas en controversia o (2) la existencia de peligro en la solvencia y estabilidad de toda su empresa. En estas circunstancias, su inacción es inexplicable.

■ Como dijimos, el 23 de julio de 1986 Interface dio por concluida la relación. Systema esperó quince (15) meses para presentar su demanda; tardó tres (3) meses más en emplazar a la demandada y, finalmente, el foro de instancia dictó el remedio de *injunction* el 18 de abril de 1988. Esa demora de Systema viola la doctrina de incuria o *laches*. *Rivera Alejandro v. López Algarín*, 115 D.P.R. 775, 777 (1984);

---

RC Engineering y PNN Contractors. Systema nunca protestó esas ventas, excepto en 1986, año de la terminación del contrato.

(²) El tribunal de instancia concluyó, a base de prueba documental, que Systema era un distribuidor exclusivo de Interface.

Aunque de ordinario no intervenimos con las determinaciones de hecho del tribunal de primera instancia, el análisis integral de la prueba documental en este caso nos lleva a sostener lo contrario. *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987).

*Piovanetti Doumont v. Martínez*, 99 D.P.R. 663, 667 (1971); *Vidal v. Monagas*, 66 D.P.R. 622, 641 (1946).

La situación en el mercado al momento de la emisión del *injunction*, y aun antes, se había consolidado. A partir de julio de 1986, aunque Interface todavía le vendía a Systema, lo cierto es que aquélla concentró sus esfuerzos en otros distribuidores y contratistas en Puerto Rico. La orden interdictal colocó a la demandada peticionaria en la difícil situación de tener que incumplir contratos con otros distribuidores. En adelante, sin justificación previa en la órbita contractual Interface-Systema, todo distribuidor debía acudir a los demandantes recurridos para que éstos le fijaran los precios y términos de crédito.

En resumen, habida cuenta de la situación reseñada, el *injunction* concedido en este caso resultó de poco valor para Systema y de gran perjuicio para Interface.

*Revocamos la orden recurrida y devolvemos el caso a instancia para la determinación crucial sobre ausencia o existencia de justa causa en la terminación del convenio de distribución en controversia.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió.