# 99 DTA 125

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

COCO RICO INC.
Recurrido

v.

ORANGE CRUSH DE PUERTO RICO, INC. Y B. FERNANDEZ Y HNOS., INC.
Recurrentes

Núm. KLCE-98-01190

San Juan, Puerto Rico, a 19 de marzo de 1999

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Aponte Jiménez y Giménez Muñoz

Giménez Muñoz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se solicita la revisión de la resolución emitida por el Tribunal de Primera Instancia del 23 de octubre de 1998 en la cual denegó una moción de desestimación y determinó que no era de aplicación a la controversia el Artículo 2-A (c) de la Ley Núm. 75 del 24 de junio de 1964, según enmendada, Ley de Contratos de Distribución.

### I

Coco Rico, Inc. (Coco Rico) se dedica a la manufactura de un concentrado de coco que se utiliza en la producción de unos refrescos llamados Coco Rico y Diet Coco Rico. Orange Crush de Puerto Rico, Inc., (en adelante Orange Crush) es el fabricante de dichos refrescos. Desde el 1987, entre Coco Rico y Orange Crush,

existe un contrato de distribución cobijado por la Ley Núm. 75 del 24 de junio de 1964, según enmendada, conocida como la Ley de Contratos de Distribución (Ley 75). 10 L.P.R.A. sec. 278 *et seq*. Entre los deberes y derechos que contemplaba el contrato estaban el manufacturar el producto final, o sea el refresco, darle publicidad, mercadearlo, distribuirlo y venderlo.

Por otro lado la compañía B. Fernández & Hnos., Inc. (B. Fernández) tomaba parte en diferentes gestiones del contrato de distribución entre Coco Rico y Orange Crush. Sin embargo, el contrato de distribución entre estas partes prohibia a Orange Crush ceder sus derechos y obligaciones contractuales, sin el consentimiento de Coco Rico.

En el 1996 Coco Rico dio por terminada la relación contractual con Orange Crush por estar B. Fernández a cargo de la distribución del refresco e inició acción de sentencia declaratoria contra Orange Crush y B. Fernández para que el tribunal declarara que la terminación era legalmente válida. Orange Crush a su vez radicó una acción bajo la Ley Núm. 75, alegando que no había justa causa para la terminación. Este pleito quedó transigido, obligándose las partes a otorgar un contrato *"igual"* al que estaba en controversia, pero con las siguientes condiciones:

*"1) Orange Crush le pagaría a Coco Rico la cantidad de $150,000.00.*

*2) Se establecieron unas cuotas anuales de compra de concentrado de coco por los próximos diez años.*

*3) El contrato tendría vigencia desde el 1 de enero de 1997 al 31 de diciembre del 2006 y se pactó la aplicabilidad de la Ley 75.*

*4) El precio por galón del concentrado sería de $30.00 hasta el total de la cuota anual y luego se cobraría $25.00 el galón todo lo que se comprara en exceso de la cuota para ese año.*

*5) Orange Crush podría dar por terminado el contrato en cualquier momento previo notificación por escrito de treinta (30) días.*

*6) Coco Rico se comprometía a honrar el contrato por el término de los diez (10) años pactados."*

Surge del expediente que la cuota anual pactada (inciso 2, antes) se pagaría en plazos mensuales.

Orange Crush se negó a pagar las mensualidades adeudadas durante el año 1997, aduciendo que no se había comprometido a una iguala mensual, igual a 1/12 de la cuota anual y sólo al pago de la cuota anual, a fin de año. Al terminar el año 1997, Orange Crush le pagó a Coco Rico únicamente la cantidad adeudada por el concentrado utilizado por ellos durante ese año, no por la cuota anual que habían pactado.

Así las cosas, el 2 de marzo de 1998, Coco Rico radicó demanda e *injunction* bajo la Ley 75 contra Orange Crush y B. Fernández por daños y perjuicios y cumplimiento específico del contrato. Coco Rico, presentó Moción Sobre Remedio Interdictal o *Injunction* Preliminar Bajo La Ley 75, de la cual desistió luego. Orange Crush, en su contestación, y al igual que en la reconvención, alegó que *"la cuota no se ajusta a las realidades del mercado"* y *"exigir la cuota sin considerar las realidades del mercado en P.R. es un acto en menoscabo de la relación contractual-principal distribuidor"*. Ello así pues, Orange Crush consideró *"se estaría obligando al distribuidor a aumentar sus costos de producción..."*. Como fundamento para la solicitud de desestimación que radicara Orange Crush, se señaló que al pretenderse cobrar una cuota anual debió alegarse y probarse la razonabilidad de la cuota. Señaló que Coco Rico tenía el peso de la prueba para determinarse si la cuota era

razonable a la luz de las exigencias del mercado.

El Tribunal de Instancia, en su resolución, declaró no ha lugar la solicitud de desestimación y resolvió que no era de aplicación al caso el Artículo 2 A (c) de la Ley 75 y no tenía Coco Rico, el peso de la prueba para demostrar la razonabilidad de la cuota fijada a la luz de las realidades del mercado de P.R.

Inconforme con lo resuelto, recurre Orange Crush y alega la comisión de tres errores que se leen del siguiente modo:

*"A. Erró el Tribunal de instancia al resolver que el principal en una relación protegida por la Ley 75 no viene obligado a alegar y probar la razonabilidad de una cuota al exigir su cumplimiento específico:*

*B. Erró el Tribunal de instancia al resolver que el distribuidor queda relegado únicamente a la defensa de "Rebus Sic Stantibus" ante un reclamo del principal de que se cumpla específicamente con una cuota anual dispuesta en una relación protegida por la Ley 75:*

*C. Erró el Tribunal de instancia al resolver que nada existe en la Ley 75 o en lo acordado entre las partes que le permita al distribuidor el reclamar que el principal alegue y pruebe la razonabilidad de una cuota cuyo incumplimiento específico se pretende."*

## II

La Regla 10.2 de las de Procedimiento Civil, permite que una parte solicite, en su alegación respondiente, la desestimación de la demanda por dejar de exponer una reclamación que justifique un remedio. 32 L.P.R.A. Ap. III, R. 10.2.

Nuestro Tribunal Supremo ha resuelto que, con referencia a esta disposición, para resolver una moción de desestimación se tienen que presumir como ciertas y buenas todas las alegaciones de la demanda. *Ramos v. Orientalist Rattan Furnt., Inc.,* 130 D.P.R. 712 (1992). Esta doctrina, sin embargo, sólo se aplica *"a los hechos bien alegados y expresados de manera clara y concluyente, que no den margen a dudas". Unisys v. Ramallo Brothers,* 128 D.P.R. 842 (1991). Por tanto, se deberán examinar las alegaciones de la demanda de la manera más favorable y liberal para el demandante y se desestimará la acción únicamente *"si el promovente no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en juicio". Unisys v. Ramallo Brothers, supra.*

Nuestro Tribunal Supremo ha resuelto que el Tribunal tiene el deber de considerar si la demanda, vista de la manera más favorable al demandante, es suficiente para constituir una reclamación válida considerando que las alegaciones únicamente tienen el propósito de *"notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes"* y que, para saber con precisión las controversias envueltas, se tendrá que recurrir al descubrimiento de prueba. *Pressure Vessels of P.R. v. Empire Gas of P.R.,* 137 D.P.R. ___ (1994), **97 JTS 144**.

La Ley de Contratos de Distribución, *supra*, gobierna todo lo relacionado con los contratos de distribución en Puerto Rico. Tiene esta ley como propósito proteger los derechos de un distribuidor de los posibles abusos de un suplidor que de por terminado o menoscabe la relación contractual tan pronto se haya creado un mercado favorable para sus productos. *Systema de P.R., Inc. v. Interface Int'l,* 123 D.P.R. 379 (1989*); Cobos Liccia v. DeJean Packing Co., Inc.,* 124 D.P.R. 896 (1989).

Dicha Ley dispone que el suplidor no podrá dar por terminado un contrato de distribución, a pesar de que existan cláusulas que le den derecho a las partes de poner fin al contrato, salvo por justa causa. 10 L.P.R.A. sec.

278-a.

El Artículo 2 A (c) de dicha Ley dispone que:

*"No se estimará que constituye justa causa la violación o incumplimiento, por parte del distribuidor, de cualquier disposición incluida en el contrato de distribución fijando cánones de conducta, o cuotas o metas de distribución, por no ajustarse a las realidades del mercado de Puerto Rico en el momento de la violación o incumplimiento por parte del distribuidor. **El peso de la prueba** para demostrar la razonabilidad del canon de conducta o de la cuota o meta fijada **recaerá sobre el principal o concedente."** (Enfasis suplido).*

En el caso de autos, la revisión de los distintos documentos del caso revelan que cuando fue emitida la resolución en controversia, el caso se encontraba en sus primeras etapas sin que las partes hubieran comenzado el mecanismo de descubrimiento de prueba. También queda claro que la determinación de si al caso le era de aplicación al Art. 2 A (c) respecto al peso de la prueba, depende enteramente de factores que no eran conocidos en el momento de la resolución emitida. Antes de resolverse esa controversia, la aplicabilidad de la susodicha disposición, el Tribunal debió considerar si estaba ante la terminación o menoscabo de un contrato de distribución que fijara cuotas o metas de distribución, tal y como lo establece la citada disposición. Para ello, la presentación de prueba es necesaria de modo que se ponga al Tribunal en posición de conocer lo contemplado por las partes y la operación de los negocios entre ellos. Existen controversias de hechos, sobre todo lo relacionado a la cuota anual del producto pactado, que hace necesaria la celebración de vista evidenciaria.

En conclusión, considera este Tribunal, que el Tribunal de Primera Instancia denegó correctamente la desestimación, pero erró al señalar, en esta etapa de los procedimientos, que no es de aplicación el Artículo 2 A (c) de la Ley 75 antes citado y que, por tanto, el principal, Coco Rico, no tiene el peso de la prueba. Para hacer tal determinación el Tribunal de Instancia no se encontraba en condiciones óptimas.

Es doctrina reconocida que toda revisión o apelación se da contra la sentencia o resolución recurrida o apelada y no contra sus fundamentos. *Piñeiro v. International Air Services of P.R., Inc.,* 140 D.P.R. ___ (1996), **96 JTS 39**. Por tanto consideramos que la determinación del Tribunal de Instancia denegando la desestimación fue correcta.

Por los fundamentos expuestos anteriormente se expide el recurso y se confirma la resolución recurrida con la modificación antes expresada en torno a la aplicación del Art. 2 A (c) de la Ley 75.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General