EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Next Step Medical Co., Inc.; Jorge Iván Dávila Nieves, Madeline Rodríguez Muñoz y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>V.<br><br>Biomet, Inc.; Biomet International, LTD.; Biomet 3i, LLC; Biomet Orthopedics Puerto Rico, Inc.; Fulano de Tal<br><br>Peticionarios | Certiorari<br><br>2016 TSPR 120<br><br>195 DPR ____ |

Número del Caso: CC-2014-440

Fecha: 14 de junio de 2016

Tribunal de Apelaciones:

Región Judicial de San Juan y Guayama, Panel II

Abogados de la parte Peticionaria:

Lcdo. Jorge I. Pieras
Lcdo. Jason R. Aguiló Suro

Abogado de la parte Recurrida:

Lcdo. Luis A. Meléndez Albizu

Materia: Ley de Contratos de Distribución (Ley Núm. 75 de 24 de junio de 1964). Efecto de renuncia a defensa de justa causa en trámite de solicitud de interdicto preliminar según provisto en el Art. 3-A de la Ley Núm. 75.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| NEXT STEP MEDICAL CO., INC.; JORGE IVÁN DÁVILA NIEVES, MADELINE RODRÍGUEZ MUÑOZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>v.<br><br>BIOMET, INC.; BIOMET INTERNATIONAL, LTD.; BIOMET 3i, LLC; BIOMET ORTHOPEDICS PUERTO RICO, INC.; FULANO DE TAL<br><br>Peticionarios | Núm. CC-2014-0440 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 14 de junio de 2016.

En este recurso se nos presenta la siguiente interrogante: ¿Qué efecto, si alguno, tiene la renuncia de la defensa de justa causa en una acción en daños iniciada al amparo de la Ley Núm. 75 de 24 de junio de 1964, 10 LPRA sec. 278 *et seq.* (2013), conocida como Ley de Contratos de Distribución (**Ley Núm. 75** o **Ley de Contratos de Distribución**), sobre una solicitud de interdicto preliminar instada bajo las disposiciones de dicho estatuto?

## I.   TRASFONDO FÁCTICO Y PROCESAL

Durante el 2002 la empresa Hand Innovations, Inc. (**Hand Innovations**) designó a Next Step Medical Co., Inc. (**Next Step** o **recurridos**) como distribuidor exclusivo en Puerto Rico de su línea de productos de trauma ortopédicos y de reparación de fracturas (**Productos Ortopédicos**).

En el 2006 Hand Innovations vendió su línea de Productos Ortopédicos a DePuy Orthopedics, Inc. (**DePuy**), subsidiaria de la empresa Johnson & Johnson International (**Johnson & Johnson**).  DePuy asumió entonces el acuerdo verbal de distribución exclusiva existente entre Hand Innovations y Next Step.

En el 2012, debido a su fusión con otra compañía, Johnson & Johnson se vio forzada a desligarse de su línea de Productos Ortopédicos y la vendió a Biomet, Inc. (**Biomet** o **peticionarios**).[1]  Cónsono con lo anterior, el 6 de agosto de 2012 Johnson & Johnson le informó a Next Step que se veía impedida de continuar supliéndole estos productos, por lo que daba por terminada su relación de distribución.

Mediante un comunicado fechado el 11 de septiembre de 2012, Biomet notificó a los ortopedas en Puerto Rico que, a partir del 16 de agosto de 2012, proveería los productos anteriormente suministrados por DePuy.  Indicó, además, que Next Step continuaría como distribuidor

---

[1]   A pesar que en la Demanda se mencionan cuatro entidades diferentes que llevan el nombre "Biomet", para efectos de este recurso, denominamos a los peticionarios colectivamente **"Biomet"** o **"peticionarios"**.

exclusivo de ciertos productos. A esos efectos señaló lo

siguiente:

> También hemos decidido continuar la relación de negocios con "Next Step Medical" para los productos de "Hand Innovations" en el mercado local. Debido a que se le ha otorgado la exclusividad en Puerto Rico a "Next Step" para estos siguientes 5 productos: S3, F3, DVR, DNP y la SEFS™ por favor llame al 787-751-1631 para obtenerlos.

Durante los próximos meses Biomet y Next Step intentaron infructuosamente de llegar a un acuerdo de distribución por escrito.

Entre tanto, el 12 de abril de 2013, Next Step y sus accionistas en su capacidad individual, presentaron una Demanda en contra de los peticionarios aduciendo menoscabo y/o terminación de su relación de distribución exclusiva en violación a la Ley Núm. 75 (Primera Causa de Acción); incumplimiento de contrato (Segunda Causa de Acción); interferencia torticera (Tercera Causa de Acción), así como conspiración y daños y perjuicios (Cuarta Causa de Acción) (Acción Civil bajo la Ley Núm. 75, **KAC2013-0275**).[2] Next Step solicitó, además, un *injunction* preliminar según provisto en el Art. 3-A de la Ley Núm. 75, 10 LPRA sec. 278b-1 (2013) (**Art. 3-A**).[3]

---

[2]     Únicamente la Primera Causa de Acción promovida por Next Step Medical Co., Inc. (**Next Step**) en contra de los peticionarios es objeto de este recurso. El resto de las reclamaciones fueron desestimadas a nivel de instancia. El Tribunal de Apelaciones confirmó la desestimación y posteriormente denegamos la expedición del recurso instado por los recurridos. Next Step Medical Co., Inc., *et al.* v. Biomet Inc., *et al.*, CC-2015-0455.

[3]     Next Step enmendó su Demanda en dos ocasiones posteriores, la última vez el 19 de junio de 2013. Los peticionarios fueron emplazados el 24 de junio de 2013.

El **20 de mayo de 2013,** Biomet informó a Next Step que daba por terminada la relación **efectivo el 20 de junio de 2013.** Explicó que le había permitido vender sus productos provisionalmente sujeto a negociaciones de buena fe para lograr un acuerdo de distribución mutuamente satisfactorio, pero esto había resultado imposible. Asimismo, aludió al supuesto pobre desempeño de Next Step como distribuidor. En esa misma fecha instituyó un proceso de sentencia declaratoria en contra de Next Step mediante el cual solicitó al tribunal determinar que no existía relación de distribución entre ellos. En la alternativa, reclamó que tenía justa causa para terminar la relación de distribución (Sentencia Declaratoria o Acción Civil **KAC2013-378**).

En el caso instado bajo la Ley Núm. 75, Acción Civil **KAC2013-0275,** el Tribunal de Primera Instancia inicialmente señaló vista de *injunction* preliminar para el 29 de mayo de 2013. No obstante, posteriormente la dejó sin efecto a solicitud de los recurridos para darles una oportunidad a las partes a llegar a un acuerdo disponiendo del pleito. A falta de una transacción, el 21 de mayo de 2013 los recurridos nuevamente instaron al foro primario a señalar la vista de interdicto preliminar. La vista se pautó nuevamente para el 3 de julio de 2013. Sin embargo, el 2 de julio de 2013 los procedimientos quedaron paralizados debido a una solicitud de traslado del caso al

Tribunal de Distrito Federal de Puerto Rico presentada por Biomet dos días antes.[4]

El 22 de octubre de 2013 el foro federal devolvió ("remand") la Acción Civil **KAC2013-0275** al tribunal estatal por falta de jurisdicción, por no existir diversidad de ciudadanía entre las partes. A base de ello, el 1 de noviembre de 2013 los recurridos reactivaron su solicitud de vista de *injunction* preliminar ante el Tribunal de Primera Instancia.

Una vez devuelta la Acción bajo la Ley Núm. 75 al tribunal local, el 5 de noviembre de 2013 el Tribunal de Primera Instancia reabrió el proceso y señaló la vista de *injunction* preliminar para el 15 de noviembre de 2013.

En la vista del 15 de noviembre de 2013 se discutieron una serie de asuntos procesales. Dado que los testigos de la parte peticionaria residían fuera de Puerto Rico y que la CPA Doris Barroso, perito de Next Step, no estaba disponible en esa fecha, se pospuso la vista de *injunction* preliminar para los días **17, 21, 24 y 29 de enero de 2014.**

El 7 de enero de 2014 los peticionarios sometieron una *Moción Renunciando a Defensa de Justa Causa y Tornando Descubrimiento de Prueba Notificado Académico, Solicitud*

---

[4]    En lo concerniente a la solicitud de sentencia declaratoria, Acción Civil **KAC2013-378**, el 3 de julio de 2013 Next Step contestó la Demanda; presentó *Reconvención y Demanda contra Tercero*, así como una *Moción Urgente Solicitando Injunction Preliminar bajo el Art. 3-A de la Ley 75, y Solicitando Señalamiento Urgente de Vista.*

No obstante, por considerar los dos procesos íntimamente relacionados, el 11 de julio de 2013 el Tribunal de Primera Instancia desestimó sin perjuicio la acción de Sentencia Declaratoria a base del traslado de la Acción Civil **KAC2013-0275** al foro federal.

*de Vista de Daños Expedita Tornando Vista de Injunction Preliminar Provisional Académica También*. Plantearon, en esencia, que renunciaban a su defensa de justa causa para evitar los costos asociados al descubrimiento de prueba cursado por Next Step. A base de ello, entendieron que correspondía calendarizar el juicio en su fondo de forma expedita para adjudicar los daños conforme a la Ley Núm. 75. Igualmente argumentaron que no existía razón para emitir un *injunction pendente lite* dado el corto lapso de tiempo previo a la celebración del juicio en su fondo.

El 17 de enero de 2014, tras escuchar los argumentos pertinentes, el Tribunal de Primera Instancia dejó sin efecto la vista de *injunction* preliminar y fijó fecha límite para que las partes sometieran sus posiciones respecto al efecto en la petición de interdicto de la renuncia de los peticionarios a la defensa de justa causa.

Posteriormente, mediante Resolución de 11 de febrero de 2014, el Tribunal de Primera Instancia declaró *No Ha Lugar* el remedio provisional solicitado por los recurridos. Indicó que el mecanismo provisto en el Art. 3-A está disponible únicamente mientras se dilucida si existe o no justa causa para terminar una relación de distribución. Razonó que, una vez el principal renuncia a la defensa de justa causa, sólo resta determinar la cuantía de los daños ocasionados al distribuidor, si alguno. "Dicho de otro modo, este Tribunal concluye que el remedio interdictal solicitado por la parte demandante

se ha tornado académico, por lo que la celebración de una vista de *injunction* preliminar resulta innecesaria". Resolución de 11 de febrero de 2014 del Tribunal de Primera Instancia en la Acción Civil **KAC2013-0275**, a la pág. 7 **(Ap. 806)**.

El 3 de abril de 2014 la parte recurrida acudió ante el Tribunal de Apelaciones donde cuestionó la denegatoria de su solicitud de *injunction* preliminar.

El 30 de mayo de 2014 el Tribunal de Apelaciones revocó la determinación del foro primario. Resolvió que, a base de la política pública esbozada en la Ley Núm. 75 y a la interpretación liberal a favor del distribuidor consignada en el estatuto, una vez la parte peticionaria renunció a la defensa de justa causa, el Tribunal de Primera Instancia venía obligado a conceder el remedio provisto en el Art. 3-A. Procedió entonces a emitir una orden de interdicto *pendente lite*.

Inconforme, Biomet recurrió ante este Foro y planteó los siguientes errores en apoyo a su recurso:[5]

1. Erró el Tribunal de Apelaciones al conferir un *injunction* preliminar sin la celebración de vista, sin fijar fianza, y sin el detalle que requiere la Regla 57.5 de Procedimiento Civil.

---

[5]     Por estar entrelazados, discutiremos ambos errores en conjunto. No obstante, dada nuestra determinación en el día de hoy, se torna innecesario atender los cuestionamientos relacionados a la fijación de fianza y, si eran o no adecuados los términos de la orden de interdicto preliminar, según contenidos en el primer error señalado.

2. Erró el Tribunal de Apelaciones al determinar que procede el remedio provisional bajo la Ley Núm. 75 cuando no existe controversia sobre si hubo justa causa para la terminación.

El 31 de octubre de 2014, expedimos el auto de *certiorari* en reconsideración. Veamos.

## II. LEY NÚM. 75

La Ley Núm. 75 persigue corregir la práctica arbitraria utilizada por ciertas empresas de descontinuar sin causa su relación de distribución con entidades en Puerto Rico una vez éstas han desarrollado un mercado propicio para los productos o servicios que son objeto de distribución, y de esta manera aprovecharse injustamente de la labor realizada por el distribuidor.[6] Para ello se estableció un mecanismo que le garantiza a los distribuidores el pago de los gastos incurridos en desarrollar un mercado para los productos o servicios en cuestión, así como la plusvalía generada como parte de esa gestión. P.R. Oil v. Dayco, 164 DPR 486 (2005); Cobos Liccia v. DeJean Packing Co., Inc., 124 DPR 896 (1989);[7]

---

[6] Dos años más tarde de promulgada, se modificaron ciertos términos de la Ley Núm. 75 mediante la Ley Núm. 105 de 23 de junio de 1966. En esta ocasión se flexibilizaron los conceptos de "distribuidor" y "contrato de distribución" comprendidos en el estatuto. Se prohibió, además, la reducción o el menoscabo de la relación de distribución sin causa justificada.

[7] Véase Oliveras, Inc. v. Universal Ins. Co., 141 DPR 900, 915 esc. 14 (1996) ("[L]a Ley Núm. 21 de 5 de diciembre de 1990 (10 LPRA sec. 279 *et seq.*) revocó legislativamente los casos Roberco, Inc. y Colón v. Oxford Inds., Inc., […] [122 DPR 115 (1988)] y Cobos Liccia v. De Jean, Packing Co., Inc., [] [124 DPR 896 (1989)], en el sentido de que los representantes de ventas no son distribuidores protegidos por la Ley Núm. 75 […]. Dicha legislación amplió a los representantes de ventas las protecciones que la Ley Núm. 75, […] le reconoce a los distribuidores. *Sin embargo, la definición de distribuidor discutida en ambos casos continúa vigente".*) (énfasis en el original).

Systema de P.R., Inc. v. Interface Int'l, 123 DPR 379 (1989).

Conforme el esquema estatutario, únicamente se le permite al principal terminar la relación sin incurrir en responsabilidad económica cuando tiene justa causa para ello,[8] según el término aparece consignado en la ley.[9] El retiro total del mercado de Puerto Rico también puede considerarse justa causa siempre que: el principal no haya intentado aprovecharse de los negocios del distribuidor; la decisión sea resultado de una negociación fallida respecto a términos esenciales del contrato, y se le notifique oportunamente al distribuidor. Medina & Medina v. Country Pride Foods, 122 DPR 172 (1988).

El estatuto igualmente fija una serie de limitaciones contractuales para este tipo de negocio, así como presunciones a favor del distribuidor con el fin de impedirle al principal el uso de subterfugios para valerse de la defensa de justa causa y de este modo obviar su responsabilidad legal.[10]

---

[8]     Art. 2 de la Ley Núm. 75, 10 LPRA sec. 278a (2013).

[9]     El Art. 1(d) de la Ley Núm. 75, 10 LPRA sec. 278(d) (2013), define justa causa de la siguiente manera:

. . . .

Incumplimiento de alguna de las obligaciones esenciales del contrato de distribución, por parte del distribuidor, o cualquier acción u omisión por parte de éste que afecte adversamente y en forma sustancial los intereses del principal o concedente en el desarrollo del mercado o distribución de la mercancía o servicios.

[10]    Art. 2-A de la Ley Núm. 75, 10 LPRA sec. 278a-1, adicionado mediante la Ley Núm. 81 de 13 de julio de 1988.

Esta disposición estatutaria encarna una importante política pública en un renglón significativo de la economía en Puerto Rico, al reducir la desventaja del poder negociador de las empresas locales ante la superioridad económica de los principales en la relación de distribución.

> La inclusión del aludido estatuto a nuestro ordenamiento tuvo el propósito de armonizar los intereses y nivelar las condiciones de contratación de dos partes económicamente dispares, que se encuentran vinculadas por una relación de índole comercial que involucra la distribución. Ello, con el fin de lograr una razonable estabilidad en las relaciones de distribución en Puerto Rico y erradicar ciertas prácticas que, más allá de contribuir con la estabilidad económica, inciden sobre las expectativas legítimas que las partes vinculadas respectivamente ostentan. Next Step Medical v. Bromedicon *et al.*, 190 DPR 474, 488 (2014). Véase, además, Medina & Medina v. Country Pride Foods, *supra*.

Según reflejado en la Exposición de Motivos que reproducimos a continuación, la Legislatura entendió que, por su trascendencia en el bienestar económico del país, era necesario actuar para detener estas prácticas arbitrarias, contrarias a los convenios existentes entre las partes, que operaban en detrimento de las empresas locales:

> El Estado Libre Asociado de Puerto Rico no puede permanecer indiferente al creciente número de casos en que empresas domésticas y del exterior, sin causa justificada, eliminan sus distribuidores, concesionarios, o agentes, tan pronto como éstos han creado un mercado favorable y sin tener en cuenta sus intereses legítimos.

La Asamblea Legislativa de Puerto Rico declara que la razonable estabilidad en las relaciones de distribución en Puerto Rico es vital a la economía general del país, al interés público y al bienestar general, y en el ejercicio del poder policial, considera necesario reglamentar, en lo pertinente, el campo de dichas relaciones, para evitar los abusos que ciertas prácticas ocasionan.

**A. Remedio Interdictal de la Ley Núm. 75 (Art. 3-A)**

La Ley Núm. 75 se enmendó en el 1971 para insertar el Art. 3-A con el propósito de autorizar expresamente la concesión de remedios provisionales en casos iniciados por distribuidores al amparo de la Ley Núm. 75. La enmienda surgió en respuesta al caso <u>Félix A. Rodríguez, Inc. v. Bristol-Myers Co.</u>, 281 F.Supp. 643 (DPR 1968), donde el Tribunal de Distrito Federal se declaró sin autoridad para obligar a las partes a continuar su relación de distribución *pendente lite*. Véase, <u>Next Step Medical v. Bromedicon</u> *et al.*, *supra*; <u>Systema de P.R., Inc. v. Interface Int'l</u>, *supra*.

El Art. 3-A dispone:

En cualquier pleito en que esté envuelta directa o indirectamente la terminación de un contrato de distribución o cualquier acto en menoscabo de la relación establecida entre el principal o concedente y el distribuidor, el tribunal podrá conceder **durante la pendencia del pleito**, cualquier remedio provisional o medida de naturaleza interdictal para hacer o desistir de hacer, ordenando a cualquiera de las partes o a ambas a continuar, en todos sus términos, la relación establecida mediante el contrato de distribución, y/o a abstenerse de realizar acto u omisión alguna en menoscabo de la misma. En todo caso en que se solicite el remedio provisional aquí provisto **el tribunal considerará los intereses de todas las partes**

**envueltas y los propósitos de política pública que informa este capítulo.** (Énfasis nuestro).

Entre otras alternativas, esta disposición permite a los tribunales restablecer provisionalmente la relación de distribución *pendente lite* en un litigio relacionado al menoscabo o terminación del vínculo contractual. De esta manera, los términos del acuerdo de distribución podrán continuar vigentes mientras el tribunal tiene bajo su consideración los méritos de la reclamación. Next Step Medical v. Bromedicon *et al.*, *supra*; Systema de P.R., Inc. v. Interface Int'l, *supra*.

El historial del Art. 3-A arroja luz sobre el propósito de esta enmienda. La Legislatura entendió que, debido a la marcada diferencia económica entre el principal y el distribuidor, la remuneración provista en la Ley Núm. 75 podría resultar insuficiente para un distribuidor enfrentar la terminación o el menoscabo a su relación, durante el tiempo que se prolongara el caso. Por lo tanto, resultaba necesario contar con alternativas judiciales que, dependiendo de las circunstancias, forzaran ya fuese la continuidad de la relación o paralizaran aquellas interferencias indebidas durante el curso del litigio. Next Step Medical v. Bromedicon *et al.*, *supra*; Systema de P.R., Inc. v. Interface Int'l, *supra*.

A esos efectos, el *Informe de la Comisión de Industria y Comercio del Senado sobre el P. de la C. 1275*

*y el P. del S. 943* (25 Diario de Sesiones de la Asamblea Legislativa (Senado), 830-831 (1971)), destacó lo siguiente:

> El P. de la C. 1275 es, sin duda, otra de las medidas que contribuyen a evitar que se frustren los propósitos de la repetida Ley núm. 75 de 1964.
>
> La experiencia demuestra que la concesión de remedios provisionales mientras se dilucidan los pleitos que se suscitan bajo la susodicha Ley núm. 75 de 1964, es esencial para evitar se torne académica la protección que dicho estatuto ofrece.
>
> Con la aprobación de la medida en cuestión quedaría claramente establecida la discreción de los tribunales para otorgar remedios provisionales y así evitar se realicen actos que podrían producir daños irreparables mientras se dilucida si existe o no, justa causa para la terminación de la relación contractual. 25 Diario de Sesiones de la Asamblea Legislativa (Senado) 831 (1971).

Por su parte, el *Informe Conjunto de las Comisiones de Planificación, Comercio e Industria y de Gobierno de la Cámara de Representantes sobre el P. de la C. 1275* (25 Diario de Sesiones de la Asamblea Legislativa (Cámara) 1207 (1971)), expuso lo siguiente en lo pertinente:

> Considerados los propósitos de la política pública que persigue el estatuto, que son precisamente los de proteger al comerciante puertorriqueño, es evidente que urge aclarar el texto de la ley a fin de disipar cualquier duda sobre las facultades de nuestros tribunales para conceder remedios provisionales en pleitos sobre contratos de distribución. Consideramos que mediante una orden de remedio provisional se pueden evitar serios disloques en negocios establecidos, y el consiguiente desempleo de numerosos empleados. Además, con este recurso judicial, se permitirá al distribuidor puertorriqueño un tiempo razonable para gestionar otras representaciones.

A base de lo anterior, podemos colegir que, a través del Art. 3-A se trata de evitar que el distribuidor, abrumado por las pérdidas y el peso económico del litigio, se vea obligado a ceder sus derechos estatutarios ante su oponente, y de este modo el estatuto pierda su efectividad.  Se pretende asegurar que la reclamación prosiga hasta su desenlace final y vindicar la política pública que promueve la Ley Núm. 75.

Es menester distinguir entre los principios que gobiernan el *injunction* tradicional de aquellos que tutelan el interdicto provisto en el Art. 3-A.  El *injunction* clásico se rige por la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V (2010), y las disposiciones correspondientes del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521 *et seq.* (2004), mientras que el interdicto estatutario proviene de un mandato legislativo expreso.[11]  El primero tiene su origen en la equidad y va dirigido esencialmente a atender situaciones donde no existe otro remedio adecuado en ley

---

[11]   Jurisprudencialmente hemos identificado los siguientes criterios rectores para disponer de las solicitudes de *injunction* preliminar tradicional:

> (1) La naturaleza de los daños que puedan ocasionársele a las partes de concederse o denegarse el recurso; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que eventualmente la parte promovente prevalezca al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el *injunction*, y (5) el posible impacto sobre el interés público del remedio que se solicita. Next Step Medical v. Bromedicon *et al.*, 190 DPR 474, 487 (2014).  Véase, además, Asoc. Vec. V. Caparra v. Asoc. Fom. Educ., 173 DPR 304 (2008); Misión Ind. P.R. v. J.P. y A.A.A., 142 DPR 656 (1997).

La Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V (2010), recoge estas directrices a la vez que adiciona los requisitos de diligencia y buena fe.

para atender los perjuicios que enfrenta una persona.  Por su parte, el remedio interdictal de la Ley Núm. 75 responde a circunstancias particulares que la Legislatura ha entendido ameritan atención especial.  Véase, <u>Next Step Medical v. Bromedicon *et al.*</u>, *supra*.

En el proceso de solicitar el remedio provisional autorizado por el Art. 3-A, el reclamante inicialmente viene obligado a presentar prueba que demuestre *prima facie* su condición de distribuidor.  Ello obedece a que no pueden reclamarse los beneficios contemplados en la Ley Núm. 75 de no existir una relación de principal-distribuidor.  <u>Cobos Liccia v. DeJean Packing Co., Inc.</u>, *supra*.

El Art. 3-A cualifica su aplicación en función de dos criterios esenciales que deben guiar el análisis del tribunal en el proceso de resolver si debe conceder algún remedio interdictal en un caso instado al amparo de la Ley Núm. 75.  Cónsono con tal mandato, el juzgador deberá balancear: (1) los intereses de las partes en el litigio, conjuntamente con (2) el cumplimiento con la política pública que reviste la Ley Núm. 75.[12]

Acorde a los designios del Art. 3-A, el reclamante deberá presentar suficiente prueba que demuestre la

---

[12]     Aunque el uso de los criterios tradicionales del *injunction* preliminar no está completamente vedado en el proceso de examinar solicitudes de remedios provisionales al amparo de la Ley Núm. 75, éstos podrán utilizarse, en la medida que resulten útiles y pertinentes, siempre condicionados, en primera instancia, por los principios rectores pautados en el Art. 3-A.  Por su naturaleza estatutaria, estos dos postulados rigen eminentemente el análisis relativo al remedio interdictal.  <u>Next Step Medical v. Bromedicon *et al.*</u>, 190 DPR 474 (2014).

magnitud de los perjuicios que estará sujeto a padecer de no concederse el *injunction* preliminar. En consonancia con lo anterior, podrá establecer que su reclamación se tornaría académica de no continuar vigente *pendente lite* el vínculo comercial. Le corresponde igualmente probar cómo se verían frustrados los intereses protegidos por la Ley Núm. 75, si no se le permite permanecer como distribuidor hasta tanto concluya el trámite judicial.

Por su parte, el principal tendrá oportunidad de defender su posición, si es que se opone al remedio interdictal solicitado. La obligación de tomar en consideración los intereses de las partes según dispuesto en el Art. 3-A, implica necesariamente contrastar los daños reclamados por el distribuidor con aquellos que trae a colación el principal. También podrá allegar prueba de cómo, en su caso particular, conceder el *injunction* preliminar estaría reñido con la política pública que promueve el estatuto.

Los criterios anteriormente esbozados deben aplicarse de manera flexible adaptándose a cada situación fáctica. El tribunal, en su sana discreción, y guiado por la liberalidad que rige la interpretación de las disposiciones de la Ley Núm. 75, evaluará la evidencia presentada para determinar si, en efecto, se justifica

obligar a las partes a continuar su relación de distribución hasta tanto concluya el litigio.[13]

Por otro lado, el término justa causa es una defensa expresamente establecida en la Ley Núm. 75. Por ser una defensa afirmativa, es renunciable. El efecto práctico de abandonar esta defensa es admitir que se terminó o interfirió indebidamente con la relación de distribución sin que mediara alguna de las justificaciones provistas en la Ley de Contratos de Distribución. Como resultado, el principal viene obligado a responder civilmente de aquellos daños que el distribuidor pueda establecer en su día.

Para propósitos de este recurso, a base de la aceptación de Biomet, no existe controversia que el vínculo comercial entre las partes se rompió sin que mediaran razones legalmente válidas para ello. Surge entonces la interrogante si, bajo estas circunstancias, el tribunal podía dictar un interdicto preliminar obligándoles a continuar su relación comercial hasta que se adjudicasen los daños que le corresponden al

---

[13]     A tono con los propósitos que la inspiran, el Art. 4 de la Ley Núm. 75 dispone, específicamente, para que sus preceptos se interpreten liberalmente a favor del distribuidor.

> Las disposiciones del presente capítulo son de orden público y por lo tanto los derechos que tales disposiciones determinan no pueden renunciarse. **Este capítulo, por ser de carácter reparador, deberá interpretarse liberalmente para la más eficaz protección de tales derechos**; en la adjudicación de las reclamaciones que surjan a su amparo, los tribunales de justicia reconocerán los referidos derechos a favor de quien efectivamente tenga a su cargo las actividades de distribución, no empece las estructuras o mecanismos corporativos o contractuales que el principal o concedente pueda haber creado o impuesto para encubrir la verdadera naturaleza de la relación establecida. (Énfasis nuestro). 10 LPRA sec. 278c (2013).

distribuidor en virtud de la Ley Núm. 75, sin antes considerar los criterios postulados en el Art. 3-A.

## B. Discusión

La reclamación por infracción a la Ley de Contratos de Distribución constituye una acción reparadora en daños que persigue la reivindicación económica por conducta torticera. La propia Ley establece los factores a tomar en consideración para garantizar una indemnización apropiada que compense las gestiones del distribuidor en abrir y desarrollar un mercado para los productos o servicios de los que se trate.

De otra parte, el remedio interdictal responde a unos criterios específicos insertados en la Ley Núm. 75 con el propósito deliberado de resguardar los derechos del distribuidor por un periodo de tiempo limitado. Son los **intereses de las partes y la protección de la política pública que informa el estatuto los que rigen su uso.**

Según se desprende de lo anterior, la justa causa y el interdicto provisional representan dos esquemas separados consignados en un mismo estatuto. A pesar que ambos se complementan en aras de implementar la política pública que persigue la Ley Núm. 75, cada uno sirve un propósito diferente y cuenta con requisitos particulares.

La justa causa se establece como una defensa a la acción en daños provista en la Ley de Contratos de Distribución. El estatuto define la conducta o eventos que cualifican como tal. Corresponde al principal en la

relación probar la existencia de alguno de ellos para poder eludir la responsabilidad impuesta por la Ley Núm. 75.

Ahora bien, el interdicto provisional opera estrictamente como mecanismo de transición hasta que el litigio culmine. Tiene como propósito evitar que, al retirarle o menoscabar el derecho a vender los productos o servicios correspondientes, los negocios del distribuidor se desangren y colapsen económicamente.

Sin embargo, este remedio no opera automáticamente. Por el contrario, despuntan unos requisitos estatutarios que exigen que cada parte pruebe cómo sus intereses se verán perjudicados de concederse o negarse el remedio, a la vez que se afectan las consideraciones de política pública que impone la Ley Núm. 75. Así pues, corresponde al distribuidor agraviado probar el impacto negativo en sus operaciones comerciales a causa del menoscabo o la terminación de la distribución, según sea el caso, para poder obtener un *injunction* a su favor. Por su parte, el principal que se oponga, debe hacer lo propio, ya sea atacando la validez de los argumentos presentados por el promovente o aportando prueba del detrimento que sobrevendrá a sus negocios, productos, o servicios, de obligarlo a mantener la relación *pendente lite*. Véase, Systema de PR v. Interface Int'l, *supra*. Una vez las partes expongan sus respectivas posiciones, el juzgador deberá evaluarlas balanceando los intereses de cada una de

ellas a la luz de los propósitos que informan esta legislación de índole socio-económica para poder tomar una decisión informada.

Es preciso señalar que, el remedio interdictal **no** adviene académico por el simple hecho que el principal admita su responsabilidad al reconocer la inexistencia de justa causa. A pesar que bajo este supuesto se limita el caso a la determinación de daños, no hay certeza de cuándo tendrá lugar esa adjudicación. En este sentido, previo a celebrar la vista de daños, las partes habitualmente necesitarán llevar a cabo descubrimiento de prueba, además de preparar informes periciales, que validen sus respectivas posiciones atinentes a las pérdidas económicas resarcibles conforme a la Ley Núm. 75. De igual manera, pueden surgir dilaciones en el trámite del caso por otras razones. Entre tanto, las operaciones del distribuidor pueden continuar deteriorándose irremediablemente.

De igual forma, el hecho de que eventualmente se indemnice al distribuidor por sus gestiones en desarrollar un mercado, no elimina la posibilidad que, entre tanto, sufra daños irreparables. En algunos casos, las compensaciones que puedan serle adjudicadas, no atienden adecuadamente aquellos perjuicios intermedios de naturaleza inmediata resultantes de la terminación o el menoscabo de la relación. Inclusive, cabe la posibilidad de que la acción indemnizatoria se torne académica debido a que la empresa no tenga la capacidad económica para

enfrentar un litigio si no recibe *pendente lite* los productos e ingresos provenientes de la distribución o que se ponga en peligro la solvencia y estabilidad de la entidad comercial. Véase, Systema de PR, Inc. v. Interface Int'l, *supra*.

Por último, el remedio que contempla el Art. 3-A es **provisional**. No se trata de una relación forzada a perpetuidad. El mecanismo provisto por este articulado, no implica obligar a un principal a mantenerse en una relación de distribución indeseada *ad perpetuam*. El propio estatuto limita su aplicación a un término de tiempo definido. Así pues, expresamente dispone que el tribunal podrá conceder cualquier medida interlocutoria "durante la pendencia del pleito". Más importante aún, este remedio no se concede mecánicamente. Es necesario cumplir con los criterios impuestos en el Art. 3-A para poder justificar la continuidad temporera de la relación comercial.

Advertimos, además, que no por ello se deja al principal en estado de indefensión. Según explicamos anteriormente, el régimen pautado exige que, previo a tomar una decisión respecto al *injunction* temporero, igualmente se tomen en consideración los intereses del principal.

No vemos razón para descartar mecánicamente el uso del remedio interdictal provisional meramente porque el principal haya aceptado que no medió justa causa para

cesar la relación de distribución. Aunque pueden coincidir en algunos aspectos, por su naturaleza particular, los criterios establecidos en el Art. 3-A funcionan independientes del resultado de una acción por violación a la Ley Núm. 75. Cada una de estas disposiciones estatutarias persigue objetivos propios aunque sirvan una política pública común.

Concluimos pues, que el remedio interdictal provisto en la Ley Núm. 75 no está atado a la determinación de justa causa. Sancionar esta interpretación frustraría los designios de la Ley de Distribución y tornaría inoperante el Art. 3-A. Los remedios provisionales decretados estatutariamente no están limitados a la etapa de determinación de responsabilidad del litigio. Según mencionamos anteriormente, los daños *pendente lite* pueden extenderse igualmente mientras el tribunal tiene bajo su consideración los méritos de las cuantías reclamadas.

En el caso que nos ocupa, nunca se le brindó a las partes la oportunidad de presentar prueba para sostener sus respectivas posiciones en torno al interdicto preliminar solicitado. Consiguientemente, el tribunal no tuvo ocasión de conciliar sus respectivos intereses a la luz de la política pública que tutela el estatuto. El foro primario entendió que, una vez admitida la ausencia de justa causa, no existía fundamento legal para considerar los méritos de la solicitud de interdicto preliminar. Por su parte, el Tribunal de Apelaciones

llegó a la conclusión opuesta. Determinó que, a base de la admisión del peticionario, procedía el interdicto *pendente lite* sin trámite ulterior alguno y sin que Biomet se allanara a su expedición.

Erró, por lo tanto, el Tribunal de Apelaciones al conceder el remedio interdictal provisional en este caso, sin que antes se celebrase una vista donde las partes tuviesen la oportunidad de aportar prueba de cómo se verían afectados sus respectivos intereses de no concederse, a la luz de los propósitos que inspiran la Ley Núm. 75 y en cumplimiento con el mandato expreso del Art. 3-A de dicho estatuto.[14]

### III. CONCLUSIÓN

Conforme lo anterior, se revoca la Sentencia del Tribunal de Apelaciones del 30 de mayo de 2014, mediante la cual concedió el remedio interdictal provisional en este caso. En la eventualidad que Next Step continúe interesado en tramitar el *injunction pendente lite*, el Tribunal de Primera Instancia deberá señalar vista a tales efectos lo más pronto posible para evaluar los méritos de su solicitud a la luz de los criterios provistos en el Art. 3-A según anteriormente discutido.

---

[14] La vista tiene como propósito permitir a las partes presentar evidencia sobre aquellos eventos relevantes al trámite en los que están en desacuerdo. Torres Ponce v. Jiménez, 113 DPR 58, 60 (1982). "Por eso, se ha resuelto que es innecesario celebrar una vista evidenciaria como requisito previo para emitir un *injunction* preliminar cuando no existen controversias de hechos materiales." AMPR *et als.* v. Sist. Retiro Maestros II, 190 DPR 88, 90 (2014).

En lo concerniente a la Primera Causa de Acción de la Segunda Demanda Enmendada,[15] únicamente resta el trámite judicial relacionado a los daños reclamados por Next Step a tenor de la Ley Núm. 75. Ya que la parte peticionaria renunció a su defensa de justa causa para terminar el contrato de distribución en cuestión, **procede que el Tribunal de Primera Instancia señale la celebración de la correspondiente vista de daños a la brevedad posible**.

Se dictará Sentencia de conformidad.


Roberto Feliberti Cintrón
Juez Asociado

---

[15] Véase la página 3 de esta Opinión.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| NEXT STEP MEDICAL CO., INC.; JORGE IVÁN DÁVILA NIEVES, MADELINE RODRÍGUEZ MUÑOZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>v.<br><br>BIOMET, INC.; BIOMET INTERNATIONAL, LTD.; BIOMET 3i, LLC; BIOMET ORTHOPEDICS PUERTO RICO, INC.; FULANO DE TAL<br><br>Peticionarios | **Núm.** <u>CC-2014-0440</u> | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de junio de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones del 30 de mayo de 2014, mediante la cual concedió el remedio interdictal provisional en este caso. En la eventualidad que Next Step continúe interesado en tramitar el *injunction pendente lite*, el Tribunal de Primera Instancia deberá señalar vista a tales efectos lo más pronto posible para evaluar los méritos de su solicitud a la luz de los criterios provistos en el Art. 3-A según discutido en la Opinión.

En lo concerniente a la Primera Causa de Acción de la Segunda Demanda Enmendada, únicamente resta el trámite judicial relacionado a los daños reclamados por Next Step a tenor de la Ley Núm. 75. Ya que la parte peticionaria renunció a su defensa de justa causa para terminar el contrato de distribución en cuestión, **procede que el Tribunal de Primera Instancia señale la celebración de la correspondiente vista de daños a la brevedad posible**.

Lo acordó el Tribunal y certifica el Secretario del Tribunal. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo